UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAINT FRANCIS MEDICAL CENTER, et al.,<br><br>**Plaintiffs,**<br><br>v.<br><br>THOMAS E. PRICE, Secretary of the U.S. Department of Health and Human Services.[1]<br><br>**Defendant.** | Civil Action No. 15-1659 (JDB) |

## MEMORANDUM OPINION

The formula that the Department of Health and Human Services uses to determine Medicare payment rates for hospitals incorporates data on the number of hospital discharges in 1981. This data helps form the base rate, which is then adjusted and used to determine the current hospital payment rates. The plaintiffs here—almost 300 hospitals that participate in the Medicare program—believe that the 1981 data is faulty. Under the prior version of the applicable regulation—42 C.F.R. § 405.1885—a provider could only challenge reimbursement determinations within three years, but could challenge the predicate facts that formed the basis of the reimbursement rate even if those facts dated from more than three years prior. In other words, a provider could only challenge its payment amount within three years, but could challenge errors in even much older data that was used to determine that amount. In 2013, however, the Department promulgated a regulation ("the 2013 Amendment") stating that the three-year limit on reopening reimbursement determinations applied to predicate facts as well as actual payments.

_____
[1] Thomas E. Price has been substituted for Sylvia M. Burwell per Federal Rule of Civil Procedure 25(d).

1

Plaintiffs contend that the 2013 Amendment is unlawful under the Administrative Procedure Act, 5 U.S.C. § 706, and the Medicare Act, 42 U.S.C. § 1395 et seq., because it is an unlawful retroactive rule, because the agency's decision to apply it to their pending claims was arbitrary and capricious, and because even if the rule is applied only prospectively, it is still arbitrary and capricious to do so.  The agency, on the other hand, maintains that the 2013 Amendment is not retroactive as applied to plaintiffs' pending Board appeals; that even if it is, the agency has the power to enact the rule retroactively; that the Board was correct to apply it to their pending appeals; and that the 2013 Amendment is not arbitrary and capricious when applied prospectively.  The Court will assume without deciding that the rule is retroactive as applied here, but determines that the agency exercised its statutory authority to apply the rule retroactively. Further, the Court concludes that the Board was not arbitrary and capricious in applying the 2013 Amendment to plaintiffs' pending claims, nor is the rule as a whole arbitrary and capricious when applied prospectively.  Therefore, the Court will grant the Secretary's cross-motion for summary judgment and deny the hospitals' motion for summary judgment.

## BACKGROUND

**I. STATUTORY BACKGROUND**

**A. The Medicare Act, the Inpatient Prospective Payment System, and the 1981 Data**

In 1965, Congress enacted the Medicare Act, which provides health insurance for the elderly and disabled.  See 42 U.S.C. § 1395 et seq.  Initially, Medicare reimbursed hospitals for the actual "reasonable costs" of the inpatient services they provided.  See Methodist Hosp. of Sacramento v. Shalala, 38 F.3d 1225, 1227 (D.C. Cir. 1994) (citing 42 U.S.C. § 1395f(b) (1988)). Then in 1983, Congress "completely revised the scheme for reimbursing Medicare hospitals." Id. Under the new payment system, known as the Inpatient Prospective Payment System, hospitals

are paid a fixed amount for each Medicare beneficiary that they treat, "regardless of the actual operating costs they incur." See Sebelius v. Auburn Reg'l Med. Ctr., 133 S. Ct. 817, 822 (2013). This fixed amount is calculated by starting with a base rate that is then adjusted in various ways for each specific beneficiary at each specific hospital. See 42 U.S.C. § 1395ww(d)(2). The base rate uses 1981 hospital cost reporting data, and was first developed in 1983 for use in the 1984 fiscal year. See id. § 1395ww(d). This 1983 base rate, using 1981 data, still forms the building block of Medicare payments to hospitals today.

The problem with the 1981 data, according to plaintiffs, is that it does not distinguish between discharges and transfers. A discharge is when the patient leaves the hospital, whereas a transfer is when the patient is moved to a different care setting. Prior to 1984, both were classified as "discharges"; after 1984 they were classified differently because the distinction mattered for the hospital's payment amount. The result is that the 1981 data and hence the base rate overcounts discharges. This overcounting matters because the base rate is determined, in part, by the average cost-per-discharge. See id. § 1395ww(d)(2). Thus, an artificially high number of discharges means a lower average cost-per-discharge—in other words, plaintiffs claim that overcounting discharges in 1981 has led to underpaying hospitals in every year since. The agency acknowledges that the 1981 data does not distinguish between discharges and transfers, but disagrees that this presents a problem. See Medicare Program; Prospective Payment for Medicare Inpatient Hospital Services, 49 Fed. Reg. 234, 246 (Jan. 3, 1984) (Final Rule) (describing discharge/transfer issue as a "small discrepancy" expected to have "no significant effect" on payment rates). This case centers on whether the providers can correct the 1981 data several decades later.

3

**B. Determining and Challenging Payment Amounts**

The Centers for Medicare and Medicaid Services (CMS), an agency within the Department of Health and Human Services, administers the Medicare program. It contracts with entities known as Medicare Administrative Contractors ("MACs" or "contractors") to process provider payments. (Prior to the Medicare Modernization Act of 2003, these entities were known as "fiscal intermediaries." See 42 U.S.C. § 1395h; Note to id. § 1395kk-1). At the end of every fiscal year, each provider gives its MAC a cost report, and the MAC in turn calculates the hospital-specific adjustments and determines the amount owed to that provider for the prior fiscal year. See 42 C.F.R. § 405.1803. This is known as the Notice of Amount of Program Reimbursement. See id.

If a provider disputes the Notice of Program Reimbursement, it may appeal through CMS's internal review process. Generally, a provider may appeal to the Provider Reimbursement Review Board "within 180 days after notice of the [MAC's] final determination." 42 U.S.C. § 1395oo(a)(3); see also 42 C.F.R. § 405.1835. A decision by the Board becomes final after 60 days unless the Secretary "reverses, affirms, or modifies" it. 42 U.S.C. § 1395oo(f). Once the decision is final, the provider may seek review in a district court. Id.

In addition to this appeal process, both the current and the prior version of the CMS regulations at issue in this case allow a MAC to reopen an otherwise-closed final reimbursement determination within three years of the final determination. See 42 C.F.R. § 405.1885(a)–(b); see also Your Home Visiting Nurse Servs., Inc. v. Shalala, 525 U.S. 449, 451 (1999). This reimbursement determination may be reopened on a motion of CMS, the MAC itself, or the provider. 42 C.F.R. § 405.1885(a)(2), (b). After three years, however, the determination is closed and cannot be reopened. See id. § 405.1885(b); see also Regions Hosp. v. Shalala, 522 U.S. 448, 455 (1998). As we will see, the issue here is how that reopening regulation applies to this case.

**C. Predicate Facts, the <u>Kaiser</u> Decision, and the 2013 Amendment**

In 2011, a district court held that the version of § 405.1885 in effect at the time did not prohibit challenging "predicate facts" that are more than three years old, as long as the only reimbursement years at issue are within the three-year reopening period. See Kaiser Found. Hosps. v. Sebelius, 828 F. Supp. 2d 193 (D.D.C. 2011), aff'd, 708 F.3d 226 (D.C. Cir. 2013). A predicate fact is a factual determination that is used to determine the reimbursement amount. For example, the number of discharges that a hospital had in 1981 is a predicate fact that is used to determine the reimbursement amount in later years.

The version of § 405.1885(a)(1) in effect at the time of the Kaiser decision stated:

> A Secretary determination, an intermediary determination, or a decision by a reviewing entity . . . may be reopened, for findings on matters at issue in a determination or decision, by CMS[,] . . . by the intermediary[,] . . . or by the reviewing entity that made the decision[.]"

42 C.F.R. § 405.1885(a)(1) (2011). Subsections (b)(1) and (b)(2) specified that "reopenings" may only occur within three years of the challenged determination. See id. § 405.1885(b)(1)–(2). The Kaiser decision held that the term "findings on matters at issue in a determination or decision" in § 405.1885(a)(1) did not include predicate facts, and that the agency's contrary interpretation was not supported by the text, and was arbitrary and capricious because the agency had taken conflicting positions in various cases. See Kaiser Found. Hosps., 828 F. Supp. 2d at 199–203; see also Kaiser Found. Hosps. 708 F.3d at 231–33.

Following the Kaiser decision, the agency revised the regulation to make clear that predicate facts are subject to the three-year time limit. The parties call this revision "the 2013 Amendment." The 2013 Amendment added § 405.1885(a)(1)(iii), which states:

> A specific finding on a matter at issue <u>may include a predicate fact</u>, which is a finding of fact based on a factual matter that first arose in or was first determined for a cost reporting

5

> period that predates the period at issue . . . and once determined, was used to determine an aspect of the provider's reimbursement for one or more later cost reporting periods.

Id. § 405.1885(a)(1)(iii) (2014) (emphasis added). The revised subsections (b)(1) and (b)(2) make clear that the three-year time limitation applies to all reopenings—including those addressing predicate facts—whether requested by the agency or the provider. Id. § 405.1885(b). The Notice of Final Rulemaking also states the 2013 Amendment applies to "intermediary determinations, appeals, and reopenings (including requests for reopening) that are pending on or after the effective date of the final rule." Medicare and Medicaid Programs: Provider Reimbursement Determinations and Appeals, 78 Fed. Reg. 74826, 75165 (Dec. 10, 2013) (Final Rule); see also Medicare and Medicaid Programs: Provider Reimbursement Determinations and Appeals, 78 Fed. Reg. 43534, 43683 (July 19, 2013) (Proposed Rule) ("we are proposing that it be effective . . . for any appeals or reopenings . . . that are pending on or after the effective date of the final rule").

## II. FACTUAL AND PROCEDURAL HISTORY

The plaintiffs are 277 hospitals who seek to correct the 1981 discharge data incorporated into the base payment rates for hospitals. They do not challenge their reimbursement amounts for every year since 1984 (when the 1981 data was first used to determine the base rate). Rather, they only challenge their reimbursement amounts for cost years 2002 through 2015.[2] The first appeal was filed in 2005, within the three-year reopening limit for cost year 2002. Since then, additional providers and cost years have been added. See; Pls.' Mot. for Summ. J. [ECF No. 22] at 10; Compl. [ECF No. 1] ¶ 17. The appeals were all consolidated before the Board. See Compl. ¶ 26; 42 C.F.R. § 405.1837.

---

[2] Although different plaintiff hospitals challenge different sets of years, they are all between 2002 and 2015.

On April 5, 2015, the Board issued a final decision in this matter. It concluded that it lacked jurisdiction over plaintiffs' appeals because the 2013 Amendment "specifically bar[s]" this type of action, and the "revision applies to this case because it applies retroactively to pending cost report appeals." April 5, 2015 PRRB Decision, Cases Nos. 05-1826GC et al. [ECF 31-1] at AR000005. Moreover, "[t]he revision of the 1981 base year (the predicate facts) in this case is clearly the type of revision the Secretary wanted to preclude through the December 10, 2013 Federal Register notice." Id. at AR000006.

Plaintiffs timely sought review of the Board's decision in this Court. See Compl. ¶ 57.

## LEGAL STANDARD

The parties seek the Court's review of an administration action. Therefore, although the motions are styled as motions for summary judgment, Rule 56(a)'s standard does not apply. See Sierra Club v. Mainella, 459 F. Supp. 2d 76, 89 (D.D.C. 2006); Fed. R. Civ. P. 56(a). Rather, summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." Kaiser Found. Hosps., 828 F. Supp. 2d at 198 (citing Richards v. INS, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977)).

Whether the agency had the authority to apply the 2013 Amendment retroactively is a question of statutory interpretation, which a court determines de novo. See Bowen v. Univ. of Georgetown Hosp., 488 U.S. 204, 208–09 (1988). "[C]ourts should be reluctant to find such authority absent an express statutory grant." Id. at 208–09. Likewise, whether a rule has a retroactive effect is a question of law for the courts to decide. See Green v. United States, 376 U.S. 149, 160 (1964); Nat'l Petrochemical & Refiners Ass'n v. EPA, 630 F.3d 145, 162 (D.C. Cir.

2010) ("it is for the court to decide the legal question presented by petitioners' retroactivity challenge," namely, whether the rule was retroactive).

If the agency has the statutory authority to enact a retroactive rule, and if the rule is in fact retroactive, then the agency's decision to apply the rule retroactively is subject to the Administrative Procedure Act's familiar standard of arbitrary and capricious review.  This is because the Medicare Act, 42 U.S.C. § 1395oo(f)(1), incorporates the Administrative Procedure Act, 5 U.S.C. § 706.  Under the APA's standard, the Court must "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706(2)(A).  Likewise, plaintiffs' other two claims—that the Board's decision to apply the 2013 Amendment to their pending appeals was unlawful, and that the 2013 Amendment applied only prospectively—are also evaluated under the same arbitrary and capricious standard.  See id.; 42 U.S.C. § 1395oo(f)(1).

"Under this 'narrow' standard of review, 'a court is not to substitute its judgment for that of the agency.'"  Kaiser Found. Hosps., 828 F. Supp. 2d at 198 (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)).  Rather, a decision is arbitrary and capricious if it is not "reasoned."  State Farm, 463 U.S. at 43; see also Nat'l Tel. Co-op. Ass'n v. FCC, 563 F.3d 536, 540 (D.C. Cir. 2009) ("The APA's arbitrary-and-capricious standard requires that agency rules be reasonable and reasonably explained.").  A court "must assess, among other things, whether the agency decision was based on 'consideration of the relevant factors.'"  Nat'l Tel. Co-op Ass'n, 563 F.3d at 540 (quoting State Farm, 463 U.S. at 43).

However, courts "do not defer to the agency's conclusory or unsupported suppositions." United Techs. Corp. v. Dept. of Defense, 601 F.3d 557, 562 (D.C. Cir. 2010) (internal quotation marks omitted).  Nor can the agency's "post hoc rationalizations . . . substitute for an agency's

failure to articulate a valid rationale in the first instance." Kaiser Found. Hosps., 828 F. Supp. 2d at 198 (internal quotation marks omitted) (citing El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. Dept. of Health & Human Servs., 396 F.3d 1265, 1276 (D.C. Cir. 2005)).  But the explanation need not be perfect: "a decision that is not fully explained may be upheld 'if the agency's path may reasonably be discerned.'" Id. at 198 (quoting Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 286 (1974)).

## DISCUSSION

### I. RETROACTIVE APPLICATION OF THE 2013 AMENDMENT

The Court will assume without deciding that the 2013 Amendment is retroactive as applied to appeals on reopenings that were pending on its effective date.  The parties do not dispute—nor could they—that the Secretary has the statutory authority to apply the 2013 Amendment retroactively.  The relevant statute states: "A substantive change in regulations . . . . shall not be applied . . . retroactively . . . unless the Secretary determines that (i) such retroactive application is necessary to comply with statutory requirements; or (ii) failure to apply the change retroactively would be contrary to the public interest." 42 U.S.C. § 1395hh(e)(1)(A).  This is the clear statement that Bowen requires.  See Bowen, 488 U.S. at 208–09.

The parties also do not dispute that the agency invoked this statutory authority and made the statutorily required determinations.  The agency stated in the Final Rule: "We have determined that retroactive application of the proposed revision to § 405.1885 is necessary to ensure compliance with various statutory provisions . . . .  We have further determined that it would be in the public interest to apply the proposed revision to . . . appeals[] and reopenings . . . that are pending on or after the effective date of the final rule."  Final Rule, 78 Fed. Reg. at 75165.

9

The question, then, is whether that determination was arbitrary and capricious. See 42 U.S.C. § 1395oo(f)(1) (incorporating APA standard); 5 U.S.C. § 706(2)(A) (stating APA arbitrary and capricious standard). Although the agency's explanation could have been more robust, and at times the agency merged its explanation for the rule as a whole with its explanation for applying the rule retroactively, the decision was ultimately "reasonable and reasonably explained." Nat'l Tel. Co-op. Ass'n, 563 F.3d at 540.

The 2013 Amendment represents a policy choice "between the competing values of finality and accuracy." See Methodist Hosp. of Sacramento, 38 F.3d at 1235. First, the agency explained the importance of finality. It stated that the 2013 Amendment

> furthers the interests of both providers and the agency in maintaining the finality of intermediary determinations. The alternative, of allowing appeal and reopening of a predicate fact after the expiration of the 3-year reopening period, may result in inconsistent intermediary determinations on a reimbursement matter recurring in different fiscal periods for the same provider. [The alternative] . . . could also result in intermediary determinations that are contrary to Medicare law and policy regarding a specific reimbursement matter . . . . [R]eimbursement for a given provider's cost should not be based on one finding about a predicate fact in the base period and a different finding about the same predicate fact for purposes of determining reimbursement in later fiscal periods.

Final Rule, 78 Fed. Reg. at 75164.

Plaintiffs argue that because they only challenge reimbursement determinations for open cost years (2002 through 2015), rather than for already closed cost years (such as 1984 through 2001), their appeals raise no finality concerns. See Pls.' Mot. at 24. But the agency's reasoning explains why that is not true. As the agency explains, allowing predicate facts to be altered for even the open cost years could result in "a different finding about the same predicate fact for purposes of determining reimbursement in later fiscal periods." Final Rule, 78 Fed. Reg. at 75164. When asked at oral argument whether allowing the plaintiffs' pending appeals to move forward would result in inconsistent base rate determinations, plaintiffs' counsel answered that it would

not for these plaintiffs, but that he could not speak for other hospitals. The agency, on the other hand, must consider how the 2013 Amendment would apply to all hospitals. This is precisely why the determination of how to weigh the interest in finality versus the interest in accuracy is committed to the agency's judgment: it requires "consideration of the relevant factors," State Farm, 463 U.S. at 42–43, and ultimately, weighing "the competing values of finality and accuracy" to reach a policy decision, Methodist Hosp. of Sacramento, 38 F.3d at 1235.

The agency then connected the value of finality to the need for the rule to be retroactive, explaining:

> We have determined that retroactive application of the proposed revision to § 405.1885 is necessary to ensure compliance with various statutory provisions such as the target amount (under section 1886(b) of the Act) and the cap on residents for GME reimbursement (under section 1886(h)(4)(F)(i) of the Act); the 180-day period for filing appeals to the Board (under section 1878(a)(3) of the Act); and the 3-year limit on reopening (under §§ 405.1885(b)(1), (2) of the regulations). We have further determined that it would be in the public interest to apply the proposed revision to intermediary determinations, appeals, and reopenings (including requests for reopening) that are pending on or after the effective date of the final rule. Not applying the proposed revisions to pending intermediary determinations, appeals, and reopenings would undermine the 3-year limit on reopening and the interests of both the Medicare program and Medicare providers in the finality of reimbursement determinations, and would be inconsistent with the statutory scheme.

Final Rule, 78 Fed. Reg. at 75165. The agency here explicitly made the factual findings called for in 42 U.S.C. § 1395hh(e)(1)(A)(i)–(ii).

The agency later reiterated this reasoning in response to a comment, stating:

> [S]ection 1871(e)(1)(A) of the Act permits retroactive application because it is necessary to ensure compliance with various statutory payment provisions such as the TEFRA target amount (under section 1886(b) of the Act) and the caps on residents for GME and IME reimbursement (under sections 1886(h)(4)(F) and 1886(d)(5)(B)(v) of the Act); the 180-day filing period for appeals to the Board (under section 1878(a)(3) of the Act); and the 3-year period for reopening (under §§ 405.1885(b)(1), and (b)(2) of the regulations). In addition, we continue to believe that retroactive application furthers the public interest in safeguarding the 3-year limit on reopening and the interests of both Medicare providers and the Medicare program in preserving the finality of reimbursement determinations. Contrary to the commenter's assertion, the revised reopening rules still provide an avenue to correct predicate facts, thus promoting accuracy in reimbursement determinations. The

11

> revised reopening rules also protect the interests of administrative finality by ensuring that both Medicare providers and the Medicare program can close their books on a cost reporting period without worrying that the other party will invoke the Kaiser decision to make changes to predicate facts long after the close of the 3-year reopening period, when documents and witnesses may no longer be available.

Final Rule, 78 Fed. Reg. at 75169.[3]

By identifying the statutory provisions that make "(i) such retroactive application . . . necessary to comply with statutory requirements," 42 U.S.C. § 1395hh(e)(1)(A)(i), the agency has attempted to fulfill its statutory obligation. It has done so in a manner that is reasonable and reasonably explained. See Nat'l Tel. Co-op. Ass'n, 563 F.3d at 540. It is true that one of the provisions the agency identifies does not provide support for its argument. Namely, the agency's statement that retroactive application of the 2013 Amendment is necessary to comply with "the cap[] on residents for GME and IME reimbursement" was rejected by the D.C. Circuit in Kaiser Foundation Hospitals, 708 F.3d at 233 (adopting district court's statement that there is "no legal support" for the agency's claim that the Medicare Act's GME provisions require the prior version of § 405.1885 to be interpreted to include predicate facts in the three-year reopening limit). Thus, the reference to GME and IME has little weight. But the agency's reference to TEFRA does not have this same deficiency. This explanation, while not perfect, therefore meets the agency's burden under the "narrow" arbitrary and capricious standard. See State Farm, 463 U.S. at 43; see also Bowman Transp., 419 U.S. at 286 ("we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned").

---

[3] GME and IME refer to Graduate Medical Education and Indirect Medical Education, which are both statutorily authorized adjustments to a hospital's Medicare payment rate to compensate the hospital for the costs of training medical residents and interns. See Kaiser Found. Hosps., 708 F.3d at 228–29 (explaining GME and IME payments). TEFRA target amounts (the acronym stands for the Tax Equity and Fiscal Responsibility Act of 1982) refers to a cap on the rate of increase for inpatient hospital services at some hospitals, and payment adjustments that are based on where that hospital's costs fall in relation to the cap. See 42 U.S.C. § 1395ww(b); 42 C.F.R. § 413.40. As the Supreme Court recently quipped, "[w]elcome to—and apologies for—the acronymic world of federal legislation." Fry v. Napoleon Comm. Schools, No. 15-497, Slip Op. at 2 (S. Ct. Feb. 22, 2017).

Likewise, the agency reasonably made the factual determination that "(ii) failure to apply the change retroactively would be contrary to the public interest." 42 U.S.C. § 1395hh(e)(1)(A)(ii). It identified a public interest served by prioritizing finality over accuracy as the evidentiary difficulty in adjudicating facts from over 30 years ago: "documents and witnesses may no longer be available." Final Rule, 78 Fed. Reg. at 75169. At oral argument, government counsel indicated that correcting the 1981 data would be particularly difficult because the data itself is not separately coded for discharges versus transfers. While the Court does not normally credit additional information provided after the rulemaking, cf. El Rio Santa Cruz Neighborhood Health Ctr., 396 F.3d at 1276, this decision, even though "not fully explained[,] may be upheld '[because] the agency's path may reasonably be discerned.'" Kaiser Found. Hosps., 828 F. Supp. 2d at 198 (quoting Bowman Transp., 419 U.S. at 286). Although the agency perhaps should have provided this information as a specific example of why stale evidence poses a problem, it did not need to do so under the "narrow" standard of arbitrary and capricious. See State Farm, 463 U.S. at 43.

Plaintiffs also present several alternatives that the agency could have adopted to implement its policy objectives rather than applying the rule retroactively to all pending appeals. For example, plaintiffs argue, the agency could have only applied the rule retroactively to those GME-related claims that were at issue in Kaiser. See Pls.' Mot. at 21. But "a court is not to substitute its judgment for that of the agency." State Farm, 463 U.S. at 43. The fact that the agency did not adopt the plaintiffs' preferred policy choice does not render its choice arbitrary and capricious.

## II. THE BOARD'S DETERMINATION WAS NOT ARBITRARY AND CAPRICIOUS

Plaintiffs next argue that the Board's determination that the 2013 Amendment applies to their pending appeals was arbitrary and capricious. This argument is a nonstarter.

The 2013 Amendment is crystal clear that it applies to pending appeals. It states, "[w]e have further determined that it would be in the public interest to apply the proposed revision to intermediary determinations, appeals, and reopenings (including requests for reopening) that are pending on or after the effective date of the final rule." Final Rule, 78 Fed. Reg. at 75165 (emphasis added). This conclusion is also referenced in passing elsewhere in the preamble to the 2013 Amendment. For example, in responding to a comment, the preamble restates the question by noting "[t]he commenter asked whether the proposed revisions to the reopening rules, which apply to pending appeals, would govern its pending Board appeal . . . ." Id. (emphasis added). It is hard to imagine how the agency could be more clear.

Plaintiffs respond that the uncertainty comes from the relationship between 42 C.F.R. § 405.1885 and § 405.1835. The former was altered by the 2013 Amendment; the latter—which governs certain appeals taken within 180 days—was not. Plaintiffs claim that because their appeals to the Board were taken under § 405.1835, it is unclear whether the time limitations in § 405.1885 apply to them.[4]

That argument misunderstands how the two sections operate. While plaintiffs may have filed their appeal of the MAC determination with the Board within 180 days of that determination, as required by § 405.1835, they sought to challenge a predicate fact that was established much earlier than 180 days (or 3 years) before their filing. As the 2013 Amendment makes clear, challenging a predicate fact is "reopening" a "matter at issue," which is subject to the time limitations of § 405.1885. See 42 C.F.R. § 405.1885(a)(1)(iii). Plaintiffs' request is therefore governed by § 405.1885, and is not permitted under that section. The agency's own regulation was unambiguous, and the Board applied that unambiguous meaning to the matter before it.

---

[4] Plaintiffs' complaint does not state that their appeals to the Board were under § 405.1835 rather than § 405.1885. However, because the parties do not contest this fact, the Court will assume that it is true.

### III. THE 2013 AMENDMENT IS NOT ARBITRARY AND CAPRICIOUS

Finally, plaintiffs argue that the entire 2013 Amendment is arbitrary and capricious even if applied only prospectively. First, they maintain that the agency has "failed to explain adequately [its] departure from prior cases where [it] argued in favor of" plaintiffs' position here, as detailed by the district court in Kaiser. See Pls.' Mot. at 26; Kaiser Found. Hosps, 828 F. Supp. 2d at 202–03. Because the agency has "offer[ed] insufficient reasons for treating similar situations differently," the rule is arbitrary and capricious, according to plaintiffs. See County of Los Angeles v. Shalala, 192 F.3d 1005, 1022 (D.C. Cir. 1999) (internal quotation marks omitted).

The plaintiffs misunderstand County of Los Angeles's consistency requirement. In the past, the agency did treat similar situations differently without adequate explanation. See Kaiser Found. Hosps., 708 F.3d at 233 ("Alternatively, we agree with the District Court that the Secretary has acted arbitrarily in treating similarly situated parties differently."). But that inconsistency was in how the agency interpreted the prior version of § 405.1885(a)(1)—sometimes the agency argued that it permitted reopening predicate facts from more than three years prior, and sometimes it argued the opposite. See id. The 2013 Amendment altered the regulation at issue, rather than adopting a view on how that regulation should be interpreted. It made the text of the regulation explicit that predicate facts are governed by the three-year reopening period, see 42 C.F.R. § 405.1885(a)(1)(iii), and that this applies to reopenings at the request of the agency, see id. § 405.1885(b)(1), and of the provider, see id. § 405.1885(b)(2). The agency's earlier interpretations of the prior version of § 405.1885—whether inconsistent with each other or with the current version—tell us little about whether the agency's explanation for the issuance of the current version of § 405.1885 is arbitrary and capricious. Cf. FCC v. Fox Television Stations, 556 U.S. 502, 515–16 (2009) (change in agency policy generally reviewed under the same arbitrary

15

and capricious standard as initial agency action).  Imagine the counterfactual where plaintiffs' argument were correct: an agency could never adopt a new policy approach and enact that approach through rulemaking, because the new rule would (by design) contradict the old policy. This is not the type of inconsistency that renders an agency rulemaking arbitrary and capricious.

Second, the plaintiffs argue that the agency's "substantive reasoning behind promulgating the 2013 Amendment is unpersuasive."  Pls.' Mot. at 26.  This argument boils down to a disagreement with the agency's decision to prioritize finality over accuracy in the hospital base rate. See id. at 27 ("If a predicate fact . . . causes inaccurate Medicare reimbursement . . . all parties should have an interest in correcting such facts.")  But that decision is committed to the judgment of the agency.  Here, the agency determined that after three years, the value of finality outweighs the value of accuracy, and thus extended the reopening regulation to cover predicate facts.  While the plaintiffs might wish that the agency had reached a different conclusion, that does not make the agency's decision unlawful.  Here, the 2013 Amendment represents a "reasonable choice between the competing values of finality and accuracy," and is thus lawful.  Methodist Hosp. of Sacramento, 38 F.3d at 1235.

## CONCLUSION

For the reasons explained above, plaintiffs' motion for summary judgment will be denied, and defendant's cross-motion for summary judgment will be granted.  A separate order has been issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: March 10, 2017